IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JERRY GUEST, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | CASE NO. 5:13-CV-283-CAR-CHW |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| UNITED STATES POSTAL SERVICE, | : | |
| and UNADILLA, GEORGIA POSTMASTER, | : | |
| | : | |
| Defendants. | : | |

_____

### **ORDER**

Plaintiff Jerry Guest has filed a *pro se* civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. § 1346, while confined at ~~the~~ Dooly State Prison in Unadilla, Georgia. (Doc. 1.) Plaintiff was allowed to proceed *in forma pauperis*, but was ordered to pay an initial partial filing fee by the Court (Doc. 10), which was paid on November 22, 2013. Plaintiff is reminded that he is still required to eventually pay the full amount of the $350.00 filing fee using the payment plan described in 28 U.S.C. § 1915(b). The filing fee is not refundable, regardless of the outcome of Plaintiff's case, and Plaintiff is responsible for paying the entire filing fee even if his lawsuit is dismissed prior to service.

Plaintiff was also directed to file a supplemental complaint, which he did on

February 13, 2014. (Docs. 14, 16.) This case is now ripe for preliminary review.

## DISCUSSION

I.     **Standard of Review**

Pursuant to 28 U.S.C. § 1915A(a), a federal court is required to conduct an initial screening of a prisoner complaint "which seeks redress from a governmental entity or officer or employee of a governmental entity." Section 1915A(b) requires a federal court to dismiss a prisoner complaint that is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief."

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and that the complaint "must contain something more . . . than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (internal quotations and citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice").

In making the above determinations, all factual allegations in the complaint must be viewed as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). Moreover, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## II. Statement of Claims

In his original Complaint, Plaintiff, who is serving a sentence for 1993 convictions of aggravated child molestation and aggravated sodomy, sues the United States of America, the United States Postal Service, and the Unadilla, Georgia Postmaster[1]. (Compl. 1; Doc. 1.) Plaintiff alleges that he was denied access to the courts after he attempted to send a "Motion for Reconsideration" to the Georgia Court of Appeals. (Compl. 3, Doc. 1.) Specifically, Plaintiff alleges that on April 29, 2010, he mailed a "Motion for Reconsideration" to the Georgia Court of Appeals. That "mailpiece" was returned to him as undeliverable. On May 5, 2010, Plaintiff mailed a "Motion for Permission To File A Second Motion For Reconsideration" to the Georgia Court of Appeals wherein he "wrongly accused the Clerk for improvidently dismissing

---

[1] Although Plaintiff failed to list the name of the Unadilla, Georgia Postmaster, the Court finds that Plaintiff has sufficiently identified the defendant for purposes of this Order. *See generally*, *Moulds v. Bullard*, 345 F. App'x 387, 390 (11th Cir. 2009). Plaintiff does acknowledge that he received correspondence from Mary Willis, who was the Unadilla Postmaster as of August 2012, but notes that he is unaware of who the Postmaster was when the events in question began in 2010.

3

his Motion For Reconsideration." Plaintiff alleges that his pleading was returned to him, without explanation as to why his package was not delivered or why he did not receive a refund for mailing costs. Plaintiff states that he mailed a letter to the Unadilla Postmaster dated May 24, 2010, requesting an explanation and reimbursement for the undelivered package. Plaintiff's Complaint goes on to describe lengthy and documented correspondence he had with the Unadilla Post Office and the Unadilla, Georgia Postmaster ("Postmaster") regarding his complaints.

In his supplemental Complaint, Plaintiff alleges in Claim One that the United States Postal Service ("USPS") incorrectly placed a "Return to Sender" sticker over the correct mailing address for the Georgia Court of Appeals, thus causing the mail to be returned to Plaintiff and denying him access to the courts. (Suppl. Compl. 2; Doc. 16.) Plaintiff alleges that Defendant Postmaster provided him two responses stating that the mail was returned because Plaintiff had mailed it to the wrong address. Plaintiff contends that the two responses "verify that the return was intentional and not due to postal error." Plaintiff states that "it is an absolute certainty" that he did not mail the correspondence to the wrong address.[2] Plaintiff states that again he requested, but was denied, reimbursement of the mailing costs. Defendant Postmaster then allowed "two additional mail pieces to be wrongfully returned" to Plaintiff "due to either failing to investigate the correctness of the address or turning a blind eye."

---

[2] Of note, the address Plaintiff lists as the mailing address of the Court of Appeals of Georgia to which he states he sent the correspondence at issue is 47 Trinity Avenue S.W., Suite 501, Atlanta, GA 30334.

4

Plaintiff states that he has suffered mental anguish, a fear of lack of access to the courts, nausea, anxiety, emotional distress, and monetary loss.  Plaintiff further contends that had the Georgia Court of Appeals received the documents on time, they would have granted his motion for reconsideration and the case would have been remanded to the trial court for consideration on the merits, and ultimately, his conviction would have been vacated.

In Claim Two, Plaintiff contends Defendant Postmaster contacted the warden where he was incarcerated and falsely accused Plaintiff of "threatening and harassing" her. (Suppl. Compl. 4.)  Plaintiff was put into "Involuntary Segregation" for three days thereafter.  Plaintiff contends that Defendant Postmaster's act of falsely accusing him and causing him to be imprisoned in segregation deprived him of his constitutional due process rights.

## III.   Analysis

Plaintiff's Complaints assert claims against the United States under the Federal Tort Claims Act ("FTCA"), and claims against the USPS and the Unadilla, Georgia Postmaster under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The FTCA permits citizens to sue the United States for most torts committed by persons acting on behalf of the United States and constitutes a limited waiver of sovereign immunity.  *See* 28 U.S.C. § 1346(b).  Alternatively, *Bivens* allows for certain claims against federal agents who, while acting under color of federal law, have

violated the constitutional rights of an individual. *See e.g., Hardison v. Cohen*, 375 F.3d 1262, 1264 (11th Cir. 2004).

Plaintiff's claims against the Postmaster in her official capacity, to the extent that any is claimed, as well as claims against the United States Post Office, are due to be dismissed. The Supreme Court has held that *Bivens* actions are limited to suits against officers in their individual capacities - not federal agencies or officers in their official capacity. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). The Court further held that a *Bivens* action may not lie against the United States or any of its federal agencies absent a waiver. *Id.* Specifically, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Id.* at 475. Furthermore, Plaintiff's lawsuit against the Postmaster, in her official capacity, is deemed to be a lawsuit against her agency, the United States Postal Service, who Plaintiff has also sued in this action. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The USPS is an "independent establishment of the executive branch of the Government of the United States," and it retains its governmental status. *U.S.P.S. v. Flamingo Indus. (USA), Ltd.*, 540 U.S. 736, 744 (2004). The holding in *Meyer* is applicable to the USPS in this case and thus bars the claims for damages that Plaintiff asserts against the Postmaster in her official capacity and the USPS in this action.

Plaintiff's FTCA claim against the United States is also due to be dismissed. The Eleventh Circuit, in reiterating the above-cited law, recently held that

> The FTCA in 28 U.S.C. § 1346(b) provides a limited waiver of sovereign immunity for tort claims. That statute confers on federal district courts exclusive jurisdiction to hear claims against the United States for money damages caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.

*Corbett v. Transp.Sec. Admin.*, --- F. App'x ---, 2014 WL 2503772, *7 (11th Cir. 2014) (citations and internal quotation omitted).  There are, however, exceptions to the FTCA, specifically 28 U.S.C. § 2680(b), which states that "[t]he provisions of this chapter and section 1346(b) of this title [waiving sovereign immunity] shall not apply to … (b) Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter."  Clearly, this exception applies in this case.  Thus, the United States has not waived its sovereign immunity as to the claims made by Plaintiff.

For these reasons, any and all claims for damages against Defendant Postmaster in her official capacity, as well as claims against the USPS and the United States are therefore dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); 28 U.S.C. § 1915A(b)(2).

To the extent that Plaintiff seeks damages from Defendant Postmaster in her individual capacity, Plaintiff has failed to show that Defendant Postmaster violated any of his constitutional rights.  Plaintiff's first claim, wherein he contends that his right of access to the courts was violated by the actions of the Postmaster when she improperly returned his undeliverable mail to him and failed to reimburse him for the cost of the mailings, is without merit.  "To assert an access-to-the-courts claim, the plaintiff must

7

possess a non-frivolous, arguable underlying cause of action, the presentation of which was prevented by the defendant." *Id.* Thus, "[i]n order to establish a violation of the right of access to the courts . . . a prisoner must show an actual injury." *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 2010). "To state an actual injury, the plaintiff must allege that he had a cause of action that he could not vindicate because of the defendant's actions, and he must describe that underlying cause of action in his complaint." *Bryant v. Ruvin*, 477 F. App'x 605, 607 (11th Cir. 2012).

Here, it is clear that Plaintiff suffered no actual injury from Defendant's return of Plaintiff's mail. Plaintiff's record on appeal in the Georgia Court of Appeals shows that he filed a brief in support of a new trial on April 27, 2010. *Guest v. State*, Case No. A10A1532, docket sheet (Ga. App. Apr. 27, 2010). Then, on May 7, 2010, Plaintiff filed a motion to file a second motion for reconsideration. *Id.* The docket reveals that his motion was granted, and Plaintiff thereafter filed his second motion for reconsideration on May 21, 2010. *Id.* Plaintiff then filed an amended motion for reconsideration on May 25, 2010. *Id.* Both pf Plaintiff's motions were denied by order of May 27, 2010. *Id.* Since Plaintiff suffered no actual injury from Defendant's actions, there is no constitutional violation for a denial of access to the courts.

Even assuming that Plaintiff has sufficiently alleged that a constitutional violation has occurred, which the Court explicitly declines to find, such constitutional violation is not clearly established. "To be clearly established, a right must be

8

sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citation omitted) (alteration in original). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks and citation omitted). The Eleventh Circuit has explained that

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Maddox v. Stephens*, -- F.3d --, 2013 WL 4437161, at *8 (11th Cir. 2013). Furthermore, "[t]he inquiry whether a federal right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks and citation omitted). "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* (citation omitted) (alteration added). The court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

9

There is no law, case law or otherwise, that establishes that a return of mail to the sender, even if erroneously done, is unconstitutional. The same logic applies to the failure of the Postmaster to reimburse Plaintiff when his mail was returned. Even were it established that Plaintiff was due a refund of the money he spent to mail his motion, that finding would not implicate a constitutional right.

Plaintiff's second claim, that the Postmaster violated his due process rights by calling the prison warden and informing him that Plaintiff had been threatening and harassing her, is also without merit. Plaintiff's "due process *Bivens* theory requires alleging not only the deprivation of a liberty interest, but also that such deprivation impose[d] atypical and significant hardship" relative "to the ordinary incidents of prison life." *Smith v. Warden*, 519 F. App'x 673, 674 (11th Cir. 2013). To the extent Plaintiff has attempted to state a due process claim based on his placement into involuntary segregation for three days, these allegations also do not describe violations of Plaintiff's rights under the Due Process Clause. Prisoners have no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison. *See Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate); *Moody v.*

*Daggett*, 429 U.S. 78, 87 (1976) (prison officials have full discretion to control conditions of confinement, including prisoner classification) (citing 18 U.S.C. § 4081).

Furthermore, the Postmaster only reported the harassment to the warden of the prison where Plaintiff was incarcerated. The Postmaster had no authority, nor did she make the decision, to place Plaintiff in involuntary segregation. Thus, Plaintiff has failed to establish that the Postmaster violated a constitutional right, namely a due process right, in his second claim. As such, Plaintiff's claims must fail.

## CONCLUSION

Having conducted a preliminary review of Plaintiff's Complaint, as required by 28 U.S.C. § 1915A(a), the Court finds that the Complaint and all claims for damages against the Defendants should be **DISMISSED** for the failure to state a claim upon which relief could be granted. For purposes of the three strikes provision of the Prison Litigation Reform Act (PLRA), the Court determines that its decision in this case is a strike against Plaintiff. *See* 28 U.S.C. § 1915(g) (counting as strikes any action or appeal in federal court "that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.").

SO ORDERED, this 25th day of June, 2014.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

lws